STATE OF CONNECTICUT *v.* ANGEL L. ROSADO
(13692)

PETERS, C. J., CALLAHAN, GLASS, COVELLO and HULL, Js.

Argued January 17—decision released April 2, 1991

*John S. Pinney,* with whom was *Anthony Modugno,* for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Paul Murray,* assistant state's attorney, for the appellee (state).

CALLAHAN, J. The defendant was charged in a substitute information with possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a).[1] He was also charged under Part B of the substitute information as a subsequent offender, having previously been convicted of violating the same statute. A jury found the defendant guilty as charged in the substitute information and he then pleaded guilty to being a subsequent offender. The trial court sentenced the defendant to a term of imprisonment of thirty years, the execution of which was suspended after twenty years. He was also placed on probation for five years.

The charges of which the defendant was convicted arose out of a raid conducted, pursuant to a search and seizure warrant, by the Hartford police on November 5, 1987, on an apartment leased by Lydia Milton, the defendant's sister, located at 172 Lawrence Street in Hartford. In conducting the raid the officers involved in the execution of the search warrant entered Milton's

---

[1] General Statutes § 21a-277 (a) provides: "PENALTY FOR ILLEGAL MANUFACTURE, DISTRIBUTION, SALE, PRESCRIPTION, DISPENSING. (a) Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marihuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

apartment and ran down a hallway to the living room. Upon entering the living room, they observed three individuals sitting on a couch, one of whom they identified as the defendant.[2] The officers then observed the defendant get up from the couch, go toward a window, and drop a brown paper bag at his feet. They retrieved the bag and found that it contained approximately $1600 in cash, thirty-seven blue glassine packets and twenty-four white glassine packets. The contents of the packets were later tested and determined to be cocaine, morphine and heroin with a street value of approximately $2000. Other facts will be recounted as they become necessary to the court's opinion.

I

The defendant first claims that the trial court should have admitted into evidence at his trial, as an exception to the hearsay rule, a statement made by Milton, exculpatory of him and against her penal interest. We disagree.

The factual circumstances surrounding the giving of Milton's statement were revealed in a hearing conducted outside the presence of the jury to determine its admissibility. The hearing was precipitated by the state's motion in limine requesting the trial court to exclude from evidence certain statements, exculpatory of the defendant, taken from Milton and two others who were occupants of the apartment at the time of the police raid, namely, Freddy Santana and Emilio Cuellar, both of whom were also arrested. There was testimony at the hearing from William Gerace, an attorney who, at the time, represented the defendant on the narcotics charge that is the subject of this appeal, from Sharon Mason, Gerace's secretary, and from Luz Rosado, the defendant's wife.

[2] There were four people in the apartment: the defendant, Lydia Milton, Freddy Santana and Emilio Cuellar.

Gerace testified that late one afternoon as he was leaving his office four or five Hispanic individuals arrived without an appointment. Because Gerace was on his way out, he directed the group to speak to a secretary. Upon his return to the office he found typed, signed statements taken by his secretary, Mason, in affidavit form, from Milton, Santana and Cuellar. Gerace stated that thereafter he had no contact with any of the affiants.[3]

Mason testified that she took statements from Milton, Santana and Cuellar with the help of Ilsie Negron, a Spanish speaking secretary. Mason's recollection, however, differed from that of Gerace. She testified that she believed that Milton came into the office with only Luz Rosado and that she took statements from Santana and Cuellar on another day. Mason, who was a notary public, testified that after taking the statements, she administered an oath, explained the implications of the oath and made the affiants aware of the penalty for perjury.[4]

Luz Rosado testified that Santana had telephoned her and asked if she would give Milton a ride to "the lawyer's office." As a result, she picked up Milton and drove her to see Gerace.[5] She stated that she did not

---

[3] Because of the possibility that he might become a witness, Gerace withdrew as the defendant's attorney.

[4] The statements of Santana and Cuellar were exculpatory of themselves and of the defendant and placed the ownership and possession of all the narcotics found in Milton's apartment with Milton. Because the statements of Santana and Cuellar were not against their penal interest and were hearsay, those statements were not offered at the defendant's trial. There was an indication in the record, however, that the trial court "briefly looked" at the statements of Santana and Cuellar in connection with the hearing to determine the admissibility of Milton's statement when assessing the amount of corroboration for the statement.

[5] Luz Rosado's recollection differed from that of both Gerace and Mason. She testified that she went to the office with both Milton and Santana but that only Milton gave a statement on that occasion. She also testified that Milton spoke English and no translator was present when Milton gave her statement.

know the purpose of Milton's visit and that it was not discussed. Luz Rosado also testified that she had made no promises to Milton, and that she said nothing to Milton during the time Milton's statement was being taken.

Milton's affidavit states that the defendant was at her apartment only to pick up Santana and that while he was waiting for Santana the police broke in and arrested him. She went on to say, "That I know that he has nothing to do with it, and nothing was his. That the drugs seized were mine. At the time, I was selling same to support my bad habit."[6] At the close of the hearing, after argument, the trial court ruled that Milton's statement was not trustworthy and excluded it from evidence at the defendant's trial.

A *trustworthy* third party statement exculpatory of the accused and against the penal interest of the declar-

---

[6]          "AFFIDAVIT OF LYDIA MILTON

The undersigned, LYDIA MILTON, does hereby depose and say the following:

1. That I am over the age of eighteen (18) years, and understand and believe in the obligations of an oath.

2. That I reside at 172 Lawrence Street, Hartford, Connecticut with one Fred Santana.

3. That Angel Rosado came to my house to pick up Fred Santana.

4. That he was waiting for Fred to get ready.

5. That while he was waiting, the police busted in and arrested him.

6. That I know that he has nothing to do with it, and nothing was his. That the drugs seized were mine. At the time, I was selling same to support my bad habit.

7. That I have read the above and it is true and correct to the best of my knowledge and belief.

_____
Lydia Milton

Subscribed and sworn to before me this _____ day of December, 1987

_____
Commissioner of the Superior Court"

ant is admissible at the trial of the accused if the declarant is unavailable. *State* v. *Boyd,* 214 Conn. 132, 138, 570 A.2d 1125 (1990); *State* v. *Mayette,* 204 Conn. 571, 576, 529 A.2d 673 (1987); *State* v. *Hernandez,* 204 Conn. 377, 389–90, 528 A.2d 794 (1987); *State* v. *Bryant,* 202 Conn. 676, 692, 523 A.2d 451 (1987); *State* v. *Gold,* 180 Conn. 619, 630, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980); *State* v. *DeFreitas,* 179 Conn. 431, 450–51, 426 A.2d 799 (1980); see also Fed. R. Evid. 804 (b) (3). The determination of whether such a statement is sufficiently trustworthy to be admitted into evidence at trial lies within the sound discretion of the trial court. *United States* v. *Hoyos,* 573 F.2d 1111, 1115 (9th Cir. 1978); *State* v. *Mayette,* supra, 577; *State* v. *Hernandez,* supra, 390; *State* v. *Bryant,* supra, 694; *State* v. *DeFreitas,* supra, 452.

Our present rule allowing the admission of trustworthy third party statements against penal interest has its genesis in *Chambers* v. *Mississippi,* 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). Prior to *Chambers,* such third party statements were per se inadmissible as hearsay. *State* v. *Stallings,* 154 Conn. 272, 287, 224 A.2d 718 (1966); *State* v. *Mosca,* 90 Conn. 381, 387, 97 A. 340 (1916); *State* v. *Beaudet,* 53 Conn. 536, 551, 4 A. 237 (1886). In *State* v. *DeFreitas,* supra, 449, we interpreted *Chambers* as forbidding the mechanistic application of the hearsay rule to exclude all third party statements against penal interest exculpatory of an accused. We concluded, however, that *Chambers* did not mandate the admission of every such statement but required the admission only of those statements that, after a careful examination, were determined in the sound discretion of the trial court to be trustworthy. *State* v. *DeFreitas,* supra, 451–52.

Four considerations have been deemed relevant when examining the trustworthiness of declarations against penal interest: " '(1) the time of the declaration and the

party to whom the declaration was made; (2) the existence of corroborating evidence in the case; (3) the extent to which the declaration is really against the declarant's penal interest; [and] (4) the availability of the declarant as a witness.' *United States* v. *Guillette,* 547 F.2d 743, 754 (2d Cir. [1976]), cert. denied, 434 U.S. 839, 98 S. Ct. 132, 54 L. Ed. 2d 102 [1977]. See *United States* v. *Oropeza,* 564 F.2d 316, 325 (9th Cir. [1977]) [cert. denied, 434 U.S. 1080, 98 S. Ct. 1276, 55 L. Ed. 2d 788 (1978)]; *Henson* v. *United States,* 399 A.2d 16 [19] (D.C. App.) [cert. denied, 444 U.S. 848, 100 S. Ct. 96, 62 L. Ed. 2d 62 (1979)]; *People* v. *Foster,* 66 Ill. App. 3d 292, 294–95, 383 N.E.2d 788 [1978]." *State* v. *DeFreitas,* supra, 451; *State* v. *Bryant,* supra, 693; *State* v. *Frye,* 182 Conn. 476, 479, 438 A.2d 735 (1980); *State* v. *Gold,* supra, 633.

In assessing the four considerations noted, the trial court found that Milton's statement fulfilled at least two of the requirements. The court determined that Milton, the declarant, was unavailable because of recent surgery and also because of the existence of a testimonial privilege; see *State* v. *Mayette,* supra, 577; *State* v. *DeFreitas,* supra, 441; and that her statement was against her penal interest. The court, however, questioned the credibility of Luz Rosado, the defendant's wife, and the circumstances under which Milton's statement was made. The court's skepticism was apparently triggered by the fact that Milton's statement was made, not in an unguarded moment to a confidant but rather to the secretary of the attorney representing her brother, the defendant, in the attorney's office, to which office she had been delivered by the defendant's wife, while Milton herself had serious, apparently well founded, criminal charges pending against her arising out of the same incident.[7] See *United States* v. *Goins,*

---

[7] In the police raid on her apartment Milton was found to have narcotics on her person. She also apparently had other cases pending.

593 F.2d 88, 91 (8th Cir.), cert. denied, 444 U.S. 827, 100 S. Ct. 52, 62 L. Ed. 2d 35 (1979); *State* v. *Mayette,* supra, 578; *State* v. *Hernandez,* supra, 392–93. It is small wonder that in its ruminations the trial court considered the possibility that Milton's statement, the statements of Santana and Cuellar and the circumstances under which they were made, were indicative of an attempt by Luz Rosado, Milton, Santana and Cuellar to exonerate the accused and, as the court said, "let Milton take the heat." See *State* v. *Higginbotham,* 298 Minn. 1, 4–5, 212 N.W.2d 881 (1973); *Brown* v. *State,* 99 Miss. 719, 726–29, 55 So. 961 (1911); *People* v. *Shortridge,* 65 N.Y.2d 309, 312–15, 480 N.E.2d 1080, 491 N.Y.S.2d 298 (1985) (statement designed to exculpate loved one may be fatal to reliability). The court concluded that, in light of the totality of the circumstances under which Milton's statement was made, it could not find the statement trustworthy. See *State* v. *Mayette,* supra, 579. We cannot say that in so concluding the trial court abused its discretion.

The trial court also concluded that there was insufficient evidence corroborating Milton's statement to render it trustworthy. The defendant claims that the court was incorrect in so finding. He argues that the following facts brought out at the hearing were sufficient to corroborate Milton's statement. First, the apartment in which the narcotics were found was leased to Milton and the state stipulated that on two prior occasions search warrants had been executed at Milton's apartment, one on August 26, 1988, and the other on October 31, 1988, and the defendant was not present in the apartment on either occasion. Second, Santana and Cuellar signed affidavits attesting that the narcotics found in the apartment belonged to Milton. Last, when the police entered the living room, Milton was in the room and narcotics were found on her person.

These facts, however, do not necessarily corroborate the defendant's contention that the narcotics found by the police in the brown paper bag belonged to Milton. Neither the fact that there had been previous searches of Milton's apartment at which times the defendant was not present nor the fact that, when arrested, Milton had narcotics on her person does much to bolster her story claiming ownership of all the narcotics seized, including those in the brown paper bag dropped by the defendant. Moreover, the statements of both Santana and Cuellar were simply bald assertions ascribing the ownership of all the narcotics in the apartment to Milton.[8] There was no indication in either statement as

---

[8] "AFFIDAVIT OF FREDDY SANTANA

The undersigned, FREDDY SANTANA, does hereby depose and say the following:

1. That I am over the age of eighteen (18) years, and understand and believe in the obligations of an oath.

2. That I reside at 64 Arnold Street, Hartford, Connecticut.

3. At the time of the occurrence I was residing with LYDIA MILTON, at 172 Lawrence Street, Hartford, Connecticut.

4. That I was waiting for Angel Rosado to pick me up at 172 Lawrence Street, Hartford, Connecticut.

5. That five minutes after Angel arrived the police came in and searched us.

6. After searching us and finding nothing on us they searched the house.

7. That they found bags of dope under the sofa in the living room.

8. That they arrested everybody in the house:
    1. Emilio Cuellar
    2. Lydia Milton
    3. Angel Rosado
    4. Freddy Santana

9. That the dope did not belong to Angel Rosado or myself. It belonged to Lydia Milton.

---

Freddy Santana

Subscribed and sworn to before me this 17th day of December, 1987.

---

Sharon M. Mason
Notary Public"

to the basis of their knowledge for that assertion. See *United States* v. *Hoyos,* supra, 1115; *Ferguson* v. *Smazer,* 151 Conn. 226, 233–34, 196 A.2d 432 (1963). Further, neither Santana nor Cuellar was called by the defendant, either at the hearing or at his trial. Consequently, there never was an explanation as to why they attributed the ownership of the narcotics to Milton.[9] See *State* v. *Mayette,* supra, 579–80 (few corroborating factors to indicate the trustworthiness of the state-

---

"AFFIDAVIT OF EMILIO CUELLAR

The undersigned, EMILIO CUELLAR, does hereby depose and say the following:

1. That I am over the age of eighteen (18) years, and understand and believe in the obligations of an oath.

2. That I reside at 98 Main Street, Hartford, Connecticut.

3. That at the time of the occurrence I was visiting one LYDIA MILTON, at 172 Lawrence Street, Hartford, Connecticut.

4. That about ten minutes after arriving one Angel Rosado came in to pick up Freddy Santana.

5. That five minutes after Angel Rosado arrived the police broke in and searched everybody in the house.

6. That after not finding anything on us they searched the house and found bags of dope under the sofa in the living room.

7. That they arrested everybody in the house:
  1. Emilio Cuellar
  2. Lydia Milton
  3. Angel Rosado
  4. Freddy Santana

8. That the dope did not belong to Angel Rosado or myself. It belonged to Lydia Milton.

_____

Emilio Cuellar

Subscribed and sworn to before me this 17th day of December, 1987.

_____

Sharon M. Mason
Notary Public"

[9] The state claims that the statements of Santana and Cuellar should not have been considered as corroboration at all because they were admitted as exhibits for identification only and were never, either at the hearing or at trial, admitted as full exhibits. The trial court, however, in expounding on its reasons for excluding Milton's statement did indicate that it "briefly looked at the affidavits of Santana and Cuellar."

ments). It was reasonable that the trial court gave their statements little credence.

The corroboration requirement for the admission of a third party statement against penal interest is significant and goes beyond minimal corroboration. Third party statements exculpating an accused are suspect and the requirement of corroboration, to effectuate its purpose of circumventing fabrication, must be construed as requiring corroborating circumstances that clearly indicate the trustworthiness of the proffered statement. *United States* v. *Zirpolo,* 704 F.2d 23, 26 (1st Cir.), cert. denied, 464 U.S. 822, 104 S. Ct. 87, 78 L. Ed. 2d 96 (1983); *United States* v. *McDonald,* 688 F.2d 224, 233 (4th Cir. 1982), cert. denied, 459 U.S. 1103, 103 S. Ct. 726, 74 L. Ed. 2d 951 (1983); *United States* v. *Hoyos,* supra, 1115; *United States* v. *Barrett,* 539 F.2d 244, 253 (1st Cir. 1976); *State* v. *Mayette,* supra, 577; *State* v. *Bryant,* supra, 700; *State* v. *Gold,* supra, 630–31; *Laumer* v. *United States,* 409 A.2d 190, 200 (D.C. App. 1979); *State* v. *Barden,* 432 A.2d 404, 409 (Me.), cert. denied, 454 U.S. 1088, 102 S. Ct. 648, 70 L. Ed. 2d 624 (1981); *State* v. *Smith,* 415 A.2d 553, 560 (Me. 1980); *State* v. *Higginbotham,* supra, 4–5. In this instance we would be hard pressed to say that the trial court abused the discretion vested in it to determine questions of this nature when it concluded that there was insufficient corroboration of Milton's statement to render it trustworthy and, therefore, admissible at the defendant's trial.

The defendant also claims that the trial court's exclusion of Milton's statement violated his constitutional rights to present a defense and his right to due process of law. We disagree. The defendant's rights to present a defense and to due process do not give him the prerogative to present any testimony or evidence he chooses. In the exercise of his constitutional rights, " 'the accused, as required of the State, must comply

with the established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' *Chambers* v. *Mississippi,* [supra, 302]; *State* v. *Kemp,* 199 Conn. 473, 479, 507 A.2d 1387 (1986)." *State* v. *Douglas,* 203 Conn. 445, 455, 525 A.2d 101 (1987); *State* v. *Boucino,* 199 Conn. 207, 213, 506 A.2d 125 (1986); see *United States* v. *Nobles,* 422 U.S. 225, 241, 95 S. Ct. 2160, 45 L. Ed. 2d 141 (1975). We are unpersuaded by this first claim of the defendant.

## II

The defendant next argues that the trial court should not have allowed into evidence at his trial, as an admission, a portion of a written complaint made by the defendant to the internal affairs division (IAD) of the Hartford police department. The complaint was made on an IAD official complaint form that was sent to the defendant after he had written several letters to the police department complaining of the conduct of the arresting officers. The portion admitted stated that: "Then Detective Leo Klaus took my wallet from my pocket and withdrew 1400 dollars that I have inside my wallet most of the bills were 100 dollar bills. Detective Leo Klaus that [sic] put my money in a brown paper bag that they found with some money."[10]

The defendant first argues that the above excerpt from the IAD complaint should not have been admitted because it was not inconsistent with the position he took at trial and was therefore not an admission.[11] We disagree. "[T]he vast weight of authority, judicial,

[10] The state had offered the entire statement but the court ordered that the statement be redacted except for the part eventually admitted.

[11] The state wished to introduce the excerpt from the complaint to substantiate the fact that the defendant had a substantial amount of cash with him and to connect the cash to the narcotics. The defendant maintained that the cash had been given to him by his wife to buy a car.

legislative, and scholarly, supports the admissibility without restriction of any statement of a party offered against that party at trial." *State* v. *Stepney*, 191 Conn. 233, 251, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). There is no requirement that the statement of a party necessarily be against the party's interest either when made or offered in order to be admissible. C. McCormick, Evidence (3d Ed.) § 262; C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.5.1. There is no merit to this claim.

The defendant next contends that the statement he made on the IAD form was involuntary and that its admission violated his fifth amendment privilege against self-incrimination and his sixth amendment right to the assistance of counsel as well as his rights under article first, § 8 of the Connecticut constitution.[12] A determination of the validity of the defendant's claim necessitates that we describe briefly the factual circumstances under which the defendant's IAD complaint was made.

While he was incarcerated in the Hartford correctional center because of his failure to post bail on the charges that are the subject of this appeal, the defendant wrote several letters to the Hartford police department complaining of the conduct of the arresting officers. In a letter written in early December, 1987, the defendant set forth his allegations in some detail and asked that someone from IAD be sent to the correctional center to speak with him. In response, IAD sent the defendant a form on which to make an official complaint. On December 21, 1987, the defendant detailed his complaint on the form sent to him by IAD

---

[12] The Connecticut constitutional issue has not been separately briefed and we therefore need not discuss it. *State* v. *Crump*, 201 Conn. 489, 499 n.16, 518 A.2d 378 (1986).

and signed and swore to it before witnesses and a notary. Thereafter, on December 30, 1987, and February 11, 1988, Sergeant Walter Clarke from IAD went to interview the defendant at the correctional center. Clarke obtained the defendant's permission to speak with him, confirmed that the complaint was his and interviewed him concerning it.

At trial, the defendant argued that no portion of the written complaint should have been allowed into evidence because it was obtained without *Miranda* warnings and without the presence of counsel.[13] See *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The trial court, in response to the defendant's motion to suppress, redacted a substantial portion of the defendant's complaint but allowed into evidence that portion of the complaint noted above.

In order to be entitled under *Miranda* to the suppression of the segment of his complaint in issue, the defendant's statement would have to have been elicited as a result of custodial interrogation. *Rhode Island* v. *Innis,* 446 U.S. 291, 298, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980); *State* v. *Vitale,* 197 Conn. 396, 409, 497 A.2d 956 (1985); *State* v. *Stankowski,* 184 Conn. 121, 136–38, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981). Further, the defendant has the initial burden of showing that he was subjected to custodial interrogation. *United States* v. *Charles,* 738 F.2d 686, 695 n.11 (5th Cir. 1984); *United States* v. *De La Fuente,* 548 F.2d 528, 533 (5th Cir.), cert. denied sub nom. *Stewart* v. *United States,* 431 U.S. 932, 97 S. Ct. 2640, 53 L. Ed. 2d 249 (1977); *State* v. *Copeland,* 205 Conn. 201, 207, 530 A.2d 603 (1987); *State* v. *Doehrer,* 200 Conn. 642, 646–47, 513 A.2d 58 (1986); *State* v. *Vitale,* supra, 409. Custodial interrogation means questioning initiated by law enforcement

---

[13] The IAD form does not contain *Miranda* warnings.

officers after a person has been taken into custody or deprived of his freedom of action in any significant way. *Miranda* v. *Arizona,* supra, 444; *State* v. *Vitale,* supra, 411. Accordingly, "[b]efore one suspected of the commission of a crime is entitled to the warnings constitutionally required by *Miranda,* two conditions are required: the suspect must be in the custody of law enforcement officials; *Oregon* v. *Mathiason,* 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977); *Beckwith* v. *United States,* 425 U.S. 341, 344–48, 96 S. Ct. 1612, 48 L. Ed. 2d 1 (1976); and the suspect must be subjected to interrogation. *State* v. *Stankowski,* supra, 136." *State* v. *Vitale,* supra, 411; *State* v. *Palmer,* 206 Conn. 40, 62, 536 A.2d 936 (1988); *State* v. *Doehrer,* supra, 646–47. The state does not dispute that the defendant was in custody at the time he authored the IAD complaint. The state does argue, however, that the defendant was not subjected to interrogation. We agree.

The term "interrogation" under *Miranda* is not limited to questioning explicitly designed to elicit an incriminating response but extends to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from a suspect. The police, however, cannot be held accountable for the unforeseeable results of their words or actions. *Rhode Island* v. *Innis,* supra, 301–302; *State* v. *Palmer,* supra; *State* v. *Vitale,* supra, 411–12; *State* v. *Stankowski,* supra, 136–37. Moreover, " ' "[i]nterrogation" as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself.' *Rhode Island* v. *Innis,* [supra, 300]." *State* v. *Doehrer,* supra, 647; *State* v. *Palmer,* supra.

In this instance, the record indicates that it was the defendant, not the Hartford police, who initiated the IAD complaint. See *Miranda* v. *Arizona,* supra, 478

(volunteered statements are not barred under the fifth amendment). It also appears that the defendant's statement was formulated of his own volition, without members of the Hartford police department present. Additionally, there is nothing to indicate that by sending the IAD complaint form, Clarke, who sent the form, knew, or should have known, that such action was likely to elicit an incriminating response from the defendant. The evidence is to the contrary. Clarke testified that the only purpose for which he sent the form was so that he could obtain information to investigate the defendant's complaint of police misconduct. There is no reason to believe that he had any knowledge or expectation that the defendant, in furnishing information concerning alleged police misconduct, would write anything to incriminate himself. We conclude, therefore, that although the defendant was in custody his complaint was not made in response to "interrogation" as contemplated by *Miranda.*

Further, "[b]ecause the right to counsel applies only when the government deliberately elicits incriminating information, the defendant's sixth amendment right to counsel was not violated. *United States* v. *Henry,* 447 U.S. 264, 270, 100 S. Ct. 2183, 65 L. Ed. 2d 115 (1980); *Massiah* v. *United States,* 377 U.S. 201, 206, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964)." *State* v. *Vitale,* supra, 412.

Finally, the defendant argues that the circumstances under which he filled out the IAD complaint form rendered any statement involuntary and therefore inadmissible. We disagree. It is axiomatic that the use of an involuntary statement in a criminal trial is a violation of due process. *Mincey* v. *Arizona,* 437 U.S. 385, 398, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978); *Miranda* v. *Arizona,* supra, 461–63; *State* v. *Madera,* 210 Conn. 22, 39, 554 A.2d 263 (1989); *State* v. *DeAngelis,* 200 Conn. 224, 232, 511 A.2d 310 (1986). The measure of

voluntariness is whether a review of all the circumstances surrounding the elicitation of the statement reveals that the conduct of the law enforcement officials involved was such as to overbear the will of the accused to resist and bring about a statement not freely determined. *Rogers* v. *Richmond,* 365 U.S. 534, 544, 81 S. Ct. 735, 5 L. Ed. 2d 760 (1961); *State* v. *Madera,* supra, 39; *State* v. *Staples,* 175 Conn. 398, 408, 399 A.2d 1269 (1978). In other words, the ultimate test is whether the statement is the product of the free and unconstrained choice of its maker. If it is, it may be used against him; if it is not, the use of the statement offends due process. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 225, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *State* v. *Copeland,* supra, 207; *State* v. *Stankowski,* supra, 132; *State* v. *Derrico,* 181 Conn. 151, 161, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980).

" 'This determination of voluntariness and admissibility, in the first instance, is a question of fact for the trial court to resolve in the exercise of a legal discretion in accordance with constitutional standards of due process. *State* v. *Derrico,* supra, 162–63. This, of course, includes decisions on questions of credibility presented to the trial court. *State* v. *McCarthy,* 197 Conn. 247, 258, 496 A.2d 513 (1985). "Though the question is ultimately factual, our usual deference to fact-finding by the trial court is qualified on the question of voluntariness by the necessity for an independent and scrupulous examination of the entire record to ascertain whether the trial court's finding is supported by substantial evidence." *State* v. *Smith,* 200 Conn. 465, 478, 512 A.2d 189 (1986); *State* v. *Chung,* [202 Conn. 39, 54, 519 A.2d 1175 (1987)].' *State* v. *Schroff,* [206 Conn. 182, 195–96, 536 A.2d 952 (1988)]; see *State* v. *Barrett,* 205 Conn. 437, 451–52, 534 A.2d 219 (1987); *State* v. *DeAngelis,* supra, 232–33." *State* v. *Madera,* supra, 40.

We have made such an examination of the record and find that the evidence contained therein more than adequately supports the trial court's determination that the defendant's statement was voluntary and, consequently, supports the exercise of the trial court's discretion admitting the statement into evidence.

The judgment is affirmed.

In this opinion the other justices concurred.