[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO SUPPRESS ORAL AND WRITTEN STATEMENTS
The defendant, Latoya Abney, is charged in a Substitute Information with murder, in violation of General Statutes § 53a-54a. CT Page 4721
The defendant has moved to suppress all oral and written statements made to representatives of the Waterbury Police Department on April 9, 2000, alleging that her statements to the Waterbury Police Department are inadmissible as evidence because these statements were obtained in violation of the defendant's rights under the fourth, fifth, sixth andfourteenth amendments to the United States constitution and article first, §§ 7, 8, and 9, of the constitution of Connecticut, and relevant provisions of the Connecticut General Statutes, in one or more of the following respects:
(1) the defendant was not properly and fully advised of her constitutional rights;
(2) the defendant did not make a knowing, voluntary and intelligent waiver of her privilege against self-incrimination and of her right to counsel and other constitutional rights;
(3) the defendant's statements were not given voluntarily; and
(4) for such further reasons as may become apparent upon the hearing of the motion.
An evidentiary hearing was held before this court on January 17, 2002 and January 18, 2002. At this hearing, the Court heard testimony from the following witnesses: Detective Randy Velez, Detective Ronald Hayes, Sergeant Lawrence Hunter, Officer George Tirado, Officer Duane Tedesco, Officer John Healey, Detective David Balnis, Captain Michael Ricci, Lieutenant Edward Stephens, Sergeant David Jannetty, Detective John Kennelly, Sergeant Gary Pelosi, and Lieutenant James Nardozzi. Many of these witnesses had minimal involvement with any statements the defendant may have given.
 I FACTS
After considering the testimony and credibility of the witnesses, the Court finds the following facts were established at the hearing. For the purpose of clarity and organization, this court identifies each statement of the defendant by assigning a statement number to it.
During the early morning hours of April 9, 2000, certain members of the Waterbury Police Department were dispatched to 21 Violet Street, a residential apartment building. CT Page 4722
Upon arrival, police observed the deceased Kirk McCleod, in a bedroom, lying motionless near a bed. Also present was the defendant, Latoya Abney, who was sitting on the bed using the telephone.
The first arriving officers were Lawrence Hunter (now Sergeant) and George Tirado. Officer Hunter attempted to speak to Kirk McCleod, then shook him to generate a response. Officer Hunter saw no signs of breathing.
Officer Hunter asked the defendant to leave the bedroom. Officer Tirado proceeded to administer medical attention and life saving efforts. Officer Jannetty arrived on the scene and was also attempting to provide medical assistance.
Officer Tirado testified that during this initial time with the defendant, she was asked "what happened?" According to his testimony, her response was "I don't know, he got stabbed outside and came back here." (Statement #1.)
The emergency medical treatment personnel arrived and attended to the deceased. Officers Hunter and Tirado approached the defendant in the living room and again questioned her on what happened.
The defendant responded that the deceased was inside the apartment packing. He then went outside to get something at a store, when he came back, he had a stab wound. The deceased got into a fight outside and someone stabbed him, then came back into the apartment and collapsed. (Statement #2.)
This conversation lasted a few minutes. Officers Hunter, Tirado and Jannetty and Detective Hayes observed the defendant in the living room speaking to Angela Sparks, a police dispatcher and aunt of the defendant. Additionally, Officer Hunter heard Ms. Sparks ask Ms. Abney similar questions that he had asked her about what happened. Ms. Abney gave a similar response.
During the time the police were at the apartment, the defendant was moving about the apartment, speaking with her aunt, and using the telephone. The testimony also indicated that the defendant's status at this time was a complainant/witness. When she left the apartment with approximately three police personnel to go to the police department, she was not in handcuffs or being physically restrained.
The witnesses' testimony indicated that at no time while in that apartment was the defendant restrained, under arrest, threatened or intimidated by police personnel. CT Page 4723
Upon the defendant's arrival at the police station, she was placed in an interview room. Captain Ricci went into the interview room with the defendant. Captain Ricci and the defendant were alone for about ten minutes when Detective Balnis arrived. Captain Ricci asked the defendant if she needed anything, such as cigarettes, coffee or soda. Ms. Abney declined. Captain Ricci knew the defendant from a previous case and also knew her aunt, Ms. Sparks.
Captain Ricci then read her the Miranda rights from the "rights card". After reading the defendant her rights, he asked her if she understood them. She said yes. Captain Ricci asked her if she wanted to talk to him about what happened. The defendant responded by indicating that the deceased was packing his clothes, he left and went to his car, then he came back into the house with a stab wound, and collapsed. (Statement #3.)
Detective Balnis entered the interview room. Detective Balnis testified that, upon entering the interview room, he asked the defendant if she was advised of her constitutional rights. The defendant indicated that Captain Ricci had already told her the rights. Detective Balnis then printed out the Miranda rights form (State Exhibit #1), which he testified that she read aloud, and then she signed it.
The defendant then provided an oral statement in which she indicated that she had picked up a knife in the kitchen, the deceased grabbed her, and during the struggle he spun around and stabbed himself. (Statement #4.) Detective Balnis testified that he did not find this version plausible, and continued discussing what happened with the defendant. During these continuing discussions, Captain Ricci was also in the interview room. Detective Balnis indicated that during these discussions, the defendant's version changed, and she indicated that she stabbed the deceased. (Statement #5.)
Detective Balnis' testimony shows that when the defendant indicated that she had stabbed the deceased, the defendant was no longer free to leave. Detective Balnis then began the process of obtaining a written statement from the defendant. The procedure is as follows: the defendant is seated next to the computer monitor while Detective Balnis types her oral statement. This seating arrangement allows the defendant to view what is being typed.
The statement is taken by Detective Balnis asking questions which the defendant answers. These answers are typed on the screen in a narrative form. When the statement was complete, Detective Balnis testified that the defendant read it on the monitor. It was then printed out. The CT Page 4724 defendant then read the statement again. The first sentence of the statement was read aloud. After reading the statement, the defendant indicated that it was the truth and she signed the written statement. (Statement #6; State's Exhibit #2.)
The statement taking process took approximately two hours. Some hours later, the defendant was questioned about a knife. In between the time of the statement and the questioning about a knife, the defendant smoked cigarettes and had a few sodas.
Prior to any questioning concerning a knife, Detective Balnis testified that he printed out the advisement of rights form (State's Exhibit #3) and read it to the defendant. She read this form, said that she understood her rights, and signed the form.
The defendant proceeded to identify a knife. This identification was put in written form. (Statement #7; State's Exhibit #4.)
During the time that the defendant was with Detective Balnis and Captain Ricci, she never asked for an attorney, or asked for an opportunity to contact an attorney.
 II ADVISEMENT OF CONSTITUTIONAL RIGHTS
The defendant claims that her statements should be suppressed because she was not properly and fully advised of her constitutional rights. The Court reviews the process of obtaining these statements with the defendant's argument.
Before an individual suspected of a crime is entitled to the protection of Miranda warnings, "[t]wo threshold conditions must be satisfied . . . (1) the defendant must have been in custody [of law enforcement officers]; and (2) the defendant must have been subjected to police interrogation." (Internal quotation marks omitted.) State v. Atkinson,235 Conn. 748, 757, 670 A.2d 276 (1996). "The defendant has the burden of proving custodial interrogation . . . before the state must prove that adequate warnings of the rights that inhere in the privilege against self-incrimination were given to the defendant and that the defendant's waiver of his rights was constitutionally valid. . . . Custodial interrogation [occurs when] questioning [is] initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. . . . Although the circumstances of each case must certainly influence a determination of whether a suspect is in custody for purposes of receiving Miranda
CT Page 4725 protection, the ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. . . . A person is in custody only if a reasonable person would have believed he was not free to leave. . . . We must look at the totality of the circumstances of the questioning in order to determine whether a reasonable person would have construed those circumstances as placing him in a custody situation." (Internal quotation marks omitted.)State v. Johnson, 241 Conn. 702, 718-19, 699 A.2d 57 (1997). Thus, as previously indicated, in determining whether Miranda rights are required, there is a two part test for determining custody: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." (Internal quotation marks omitted.) State v. Pinder, 250 Conn. 385, 410, 736 A.2d 857
(1999). To be considered interrogation, the questioning "must reflect a measure of compulsion above and beyond that inherent in custody itself." (Internal quotation marks omitted.) State v. Rosado, 218 Conn. 239, 253,588 A.2d 1066 (1991).
Statements One and Two
Statements one and two are offered as oral statements of the defendant, as versions of what occurred on April 9, 2000. The defendant claims that these two oral statements should be suppressed because she was not fully and properly advised of her constitutional rights. The defendant was not advised of her constitutional rights prior to statements one and two.
At oral argument, however, the defendant withdrew her claims with regard to statements one and two only. The defendant essentially concedes that she was not in custody at the time these statements were made. Additionally, the same oral statements Ms. Abney gave to Officers Hunter and Tirado were heard by others given by the defendant to her aunt, Angela Sparks.
Since the defendant was not in custody when she gave statements one and two, the advisement of rights, pursuant to Miranda v. Arizona, was not required. Accordingly, the defendant's motion to suppress as to statements one and two is denied.
Statements Three, Four and Five
The defendant claims that these three oral statements should be suppressed because she was not properly and fully advised of her constitutional rights. This Court must look to the issue of whether the defendant was in custody at the time she made these statements. CT Page 4726
Pursuant to existing law, constitutional advisements are required if the accused is in custody and subject to interrogation. State v. Pinder,
supra, 250 Conn. 385; State v. Hoeplinger, 206 Conn. 278, 537 A.2d 1010
(1988); State v. Copeland, 205 Conn. 201, 530 A.2d 603 (1987).
"A person is in custody only if a reasonable person would have believed he was not free to leave. . . . We must look at the totality of the circumstances of the testimony in order to determine whether a reasonable person would have construed those circumstances as placing him in a custody situation." (Internal quotation marks omitted.) State v.Johnson, supra, 241 Conn. 718-19. Thus, in determining whether Miranda
rights are required, there is a two part test for determining custody: "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave."State v. Pinder, supra, 250 Conn. 410.
At the time the defendant made these three oral statements, she was in the interview room. She was not handcuffed or restrained. The testimony indicated that she was free to leave at this particular time.
This Court finds that the defendant has not established her burden of proving that she was in custody, as previously defined, when she gave statements three, four and five.
However, assuming arguendo that the defendant had established that she was in custody for these statements, the Court will review the existence and sufficiency of the advisement of constitutional rights, that were testified as being given to the defendant.
The testimony presented is that the defendant was advised of her rights from a Miranda card by Captain Ricci. After being advised of her rights, she waived them and proceeded to discuss how she believed the victim died.
As it relates to the Miranda rights:
(a) Self-Incrimination:
 The defendant was advised of this right. She waived that right. There is no evidence that she failed to comprehend that right or involuntarily waived it. Additionally, the defendant did not refuse or cease to speak to police.
(b) Right to Remain Silent:
CT Page 4727
 The defendant was advised of this right. She waived that right. There is no evidence that she failed to comprehend that right or involuntarily waived it. There is no evidence that the defendant attempted to stop speaking with police personnel.
(c) Right to Counsel and to Consult with a Lawyer:
 The defendant was advised of this right. The evidence presented was that the defendant was advised of the right from Captain Ricci, that she understood it and waived it. There is no evidence that the defendant asked for an attorney or requested the use of the telephone to contact an attorney.
After being advised of these rights, the defendant gave oral statements three, four and five.
There has been no evidence presented that the defendant was not advised of this right, that she did not understand them or that she did not understand what waiving her rights meant. The Court also considered her past involvement with the police and statement procedures. Therefore, even if the Court had found the defendant to be in custody, the testimony establishes that the defendant was fully and fairly advised of her constitutional rights.
Statements Six and Seven
As to statements six and seven, the defendant has met her burden of proving custodial interrogation. Detective Balnis' testimony indicates that, by this point, the defendant was no longer free to leave and, therefore, was in police custody.
The Court, then, must consider the issue of whether the defendant voluntarily, knowingly and intelligently waived her rights upon the advisement of her Miranda rights. "To be valid, a waiver must be voluntary, knowing and intelligent." (Internal quotation marks omitted.)State v. Stanley, 223 Conn. 674, 686, 613 A.2d 788 (1992); Miranda v.Arizona, 384 U.S. 436, 475, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). "The state has the burden of proving by a preponderance of the evidence that the defendant knowingly and intelligently waived his Miranda
rights, including his right to remain silent. . . . [T]he state must demonstrate: (1) that the defendant understood his rights, and (2) that the defendant's course of conduct indicated that he did, in fact, waive those rights. . . . In considering the validity of [a] waiver, we look, CT Page 4728 as did the trial court, to the totality of the circumstances of the claimed waiver. . . . The determination of [w]hether a defendant has knowingly and intelligently waived his rights under Miranda depends in part on the competency of the defendant, or, in other words, on his ability to understand and act upon his constitutional rights. . . . To determine whether an individual had the capacity to understand the warnings, the trial court may consider: the defendant's experience with the police and familiarity with the warnings, his level of education, his intelligence including his IQ, his vocabulary and ability to read and write in the language in which the warnings were given, his age, intoxication, his emotional state and the existence of any mental disease, disorder or retardation. . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) State v. Santiago,245 Conn. 301, 320-21, 715 A.2d 1 (1998).
The officers, Detective Balnis and Captain Ricci, complied with theMiranda rules because the defendant was given her Miranda warnings prior to making statements three through seven.
The evidence presented did not show that she did not understand the warnings, but instead showed that she waived her rights orally by acknowledging that she understood them, by speaking to Captain Ricci and Detective Balnis and by signing the warnings on the Miranda form. (State's Exhibit #1 and State's Exhibit #3.) There is no evidence that the defendant asked for an attorney. There is no credible evidence that the defendant did not voluntarily waive her privilege against self-incrimination or her right to counsel when she gave oral statements three, four and five and written statements six and seven. The defendant, therefore, acted knowingly and intelligently in waiving her privilege against self-incrimination and her right to counsel.
In addition, there is credible and sufficient evidence to establish that the defendant was competent to understand the waiver of her rights. The defendant is able to read and write in the language in which the warnings were given. The defendant was not intoxicated at the time of the waiver. The defendant was in a calm emotional state at the time of the waiver. The testimony was that the defendant was read the warnings by the Waterbury Police Department, she read the warnings, she understood them, and she signed the advisement form.
The Court finds, after a consideration of all the evidence and the totality of the circumstances, that the State has sustained its burden of proof that the defendant voluntarily and knowingly waived her constitutional rights.
The Court finds that the defendant has established that she was in CT Page 4729 custody as legally defined previously herein. The Court also considers the testimony of Detective Balnis who indicated that once the defendant stated that she had stabbed the deceased, she was not free to leave police custody.
1.) Statement #6
The defendant claims that this written statement should be suppressed because she was not properly or fully advised of her constitutional rights.
The Court considers the credible evidence that prior to this statement, the defendant was presented by Detective Balnis with the advisement of. rights form (State's Exhibit #1). Detective Balnis indicated that he read her the Miranda rights. He asked her to read the first one aloud. He heard her read the sentence and asked her if she understood them. She initialed them, and proceeded to provide a written statement. (State's Exhibit #2.)
As it relates to statement six and the Miranda rights, the defendant was advised of her right to self-incrimination, her right to remain silent and her right to counsel. The Court considers the factors of her education, prior experience with the police, and the actions of the police. The Court finds that the defendant voluntarily waived her rights.
As it relates to the Miranda rights:
(a) Self-Incrimination:
 The credible evidence shows that the defendant was advised of this right. She waived that right. There is no evidence that she failed to comprehend that right or involuntarily waived it. Additionally, the defendant did not refuse or cease to speak to Detective Balnis.
(b) Right to Remain Silent
 The defendant was advised of this right. She waived that right. There is no evidence that she failed to comprehend that right or involuntarily waived it. There is no evidence that the defendant attempted to stop speaking to Detective Balnis.
(c) Right to Counsel and to Consult with a Lawyer
The defendant was advised of this right. The evidence CT Page 4730 presented was that the defendant was advised of this right, that she understood it and waived it. There is no evidence that the defendant asked for an attorney or requested the use of a telephone to contact an attorney.
The credible evidence establishes that the defendant was properly and fully advised of her constitutional rights.
The Court finds, after a consideration of the evidence and the totality of the circumstances, that the State has sustained its burden of proof that the defendant was properly and fully advised of her constitutional rights prior to giving statement six.
2.) Statement #7
The defendant claims that statement seven should be suppressed because she was not properly and fully advised of her constitutional rights.
Prior to giving that written statement, the testimony indicates that the defendant was advised of her Miranda rights from a form. (State's Exhibit #3.)
As it relates to statement seven and the Miranda rights, the defendant was advised of her right against self-incrimination, her right to remain silent and her right to counsel.
(a) Self-Incrimination
 The credible evidence shows that the defendant was advised of this right. She waived that right. There is no evidence that she failed to comprehend that right or involuntarily waived it. Additionally, the defendant did not refuse or cease to speak to Detective Balnis.
(b) Right to Remain Silent
 The defendant was advised of this right. She waived that right. There is no evidence that she failed to comprehend that right or involuntarily waived it. There is no evidence that the defendant attempted to stop speaking to Detective Balnis.
(c) Right to Counsel and to Consult with a Lawyer
The defendant was advised of this right. The evidence CT Page 4731 presented was that the defendant was advised of this right, that she understood it and waived it. There is no evidence that the defendant asked for an attorney or requested the use of a telephone to contact an attorney.
The credible evidence establishes that the defendant was properly and fully advised of her constitutional rights.
The Court finds, after a consideration of the evidence and the totality of the circumstances, that the State has sustained its burden of proof that the defendant was properly "and fully advised of her constitutional rights prior to giving statement seven.
 III THE DEFENDANT'S OPAL AND WRITTEN STATEMENTS WERE VOLUNTARY
The defendant also claims that her oral and written statements were not given voluntarily. Even if a statement was made after a valid waiver of the right to remain silent, it is still inadmissible as afourteenth
amendment denial of due process of law if the statement was not made voluntarily. State v. Hafford, 252 Conn. 274, 298-99, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S.Ct. 136, 148 L.Ed.2d 89 (2000). "[T]he use of an involuntary confession in a criminal trial is a violation of due process. . . . The state has the burden of proving the voluntariness of the confession by a fair preponderance of the evidence. . . ." (Citations omitted; internal quotation marks omitted.) State v. Pinder,
supra, 250 Conn. 418.
"[T]he test of voluntariness is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined. . . . The ultimate test remains. . . . Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. . . . (Citations omitted; internal quotation marks omitted.) State v. Hafford, supra, 252 Conn. 299. "The determination, by the trial court, whether a confession is voluntary must be grounded upon a consideration of the circumstances surrounding it. . . . Factors that may be taken into account, upon a proper factual showing, include: the youth of the accused; his lack of education; his intelligence; the lack of any advice as to his constitutional rights; the length of detention; the repeated and prolonged nature of the CT Page 4732 questioning; and the use of physical punishment, such as the deprivation of food and sleep. . . . Under the federal constitution, however, coercive police activity is a necessary predicate to the finding that a confession is not voluntary" within the meaning of the due process clause of the fourteenth amendment. (Citations omitted; internal quotation marks omitted.) State v. Pinder, supra, 250 Conn. 419.
At the time of the statements, the evidence presented showed that the defendant spoke English, and she did not show any signs of physical impairment due to the influence of alcohol or drugs. The defendant was advised of her constitutional rights prior to making her oral and written statements. The defendant indicated that she understood her rights and signed the Miranda warning card. (State's Exhibit #1.) The detention was not prolonged. This time included the time involved with statements three through seven. There is no evidence that the defendant was deprived of either food or sleep. There was no testimony that any of the statements came from police pressure which overbore the defendant's will. After a consideration of the totality of the circumstances, the Court finds that the defendant's oral and written statements were voluntary.
 IV
The defendant did not offer any further reasons for this motion that became apparent during the hearing on this motion.
For the foregoing reasons, the defendant's motion to suppress is DENIED.
SO ORDERED.
FRANK M. D'ADDABBO, JR., J.