STATE OF CONNECTICUT *v.* RONALD E. MAYETTE
(12930)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and F. HENNESSY, Js.

Argued June 9—decision released August 4, 1987

*M. Hatcher Norris,* special public defender, for the appellant (defendant).

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, were *Julian Schlesinger,* assistant state's attorney, and *Christopher Malany,* deputy assistant state's attorney, for the appellee (state).

GLASS, J. The defendant, Ronald Mayette, was charged in an information with one count of sexual assault in the first degree in violation of General Statutes § 53a-70.[1] After a trial to the jury, the defendant was found guilty and sentenced to a term of imprisonment of eleven years, execution of which was suspended after five years, and placed on probation for four years. The defendant appealed from the judgment of conviction.

---

[1] "[General Statutes] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person.

"(b) Sexual assault in the first degree is a class B felony for which one year of the sentence imposed may not be suspended or reduced by the court."

The jury could reasonably have found the following facts. During the early morning hours of December 10, 1982, the victim, K.S., was working as a night clerk in a Mini-Mart convenience store in East Windsor. At approximately 5 a.m., she came from the storage area of the store and was confronted by a man wearing a hat and a scarf covering his face. The man pushed K.S. from the front of the store through a hallway and into a bathroom located at the rear of the store, where he sexually assaulted her. Following the attack, the assailant ordered K.S. to stay in the bathroom. The assailant then left the room but returned a short time later, apparently to assault her again. He became distracted, however, and again left the room. K.S. remained in the bathroom for a short period of time. Upon leaving the room, she observed her assailant, without the hat or scarf, assisting a customer. When he saw K.S., he approached her and pushed her back into the bathroom, and immediately left the store. K.S., upon leaving the bathroom, told the customer she had been raped and asked him to call the police. Officer Carl Weymouth, of the East Windsor police department, responded to the call and, upon arriving at the scene, interviewed K.S. who gave a detailed description of her assailant. Subsequently, she was shown a number of photographs in an attempt to identify her assailant. She positively identified the defendant as her assailant from a photo array on December 29, 1982. The store customer, Tousant Thomas, was also shown several photographs in an attempt to identify the person who had assisted him in the Mini-Mart. Thomas also identified the defendant from a photo array.

Prior to trial, the state filed a motion in limine to prevent the defendant from introducing the statements of another person made to two South Windsor police officers regarding the sexual assault in this case. The trial court granted the state's motion. The defendant

filed a pretrial motion to suppress the photo identifications made by K.S. and Thomas. The court denied this motion. Following the jury verdict of guilty, the defendant filed a motion for judgment of acquittal claiming that the evidence did not support a finding of guilty. This motion was also denied.

On appeal, the defendant contends that the trial court erred in: (1) granting the state's motion in limine; (2) denying his motion to suppress the out-of-court photo identifications; and (3) denying his motion for judgment of acquittal. We find no error.

I

The first claim of the defendant is that the trial court erred in granting the state's motion in limine which precluded him from calling witnesses to testify as to a third party's declarations against penal interest which were exculpatory to the defendant. We disagree.

To analyze this claim of error, the following additional facts are pertinent. Approximately three weeks after K.S. had been sexually assaulted, James Boscarino was arrested by the South Windsor police for an unrelated assault which had occurred at a Bess Eaton donut shop in South Windsor. During questioning, one of the South Windsor officers, Detective Francis Felber, asked Boscarino whether he had committed the assault at the Mini-Mart store in East Windsor. At first Boscarino denied committing the crime, but later stated that he could have been involved. The following day, while being transported to court for arraignment on the Bess Eaton assault charge, Boscarino was again questioned about the Mini-Mart sexual assault, as well as another sexual assault which took place at the Detrex Chemical Company warehouse in South Windsor. While questioning Boscarino about the Detrex sexual assault, Felber stated that he wanted a yes or no answer, and Boscarino stated yes, he committed the crime. Felber,

then asked: "Well, what about the 'Mini-Mart'?" Boscarino replied "Yes," and further indicated that he was familiar with the location of the store. Boscarino also stated that the Mini-Mart assault was similar to the Bess Eaton assault. On the basis of this information, Felber contacted the East Windsor police department. Subsequently, however, Boscarino repudiated the statements he had made at the police station and while being transported to court, claiming that he had admitted to committing the crimes only to get the officers to stop questioning him.

At the hearing on the state's motion, the defendant called Felber, Detective Edward Kasheta, also of the South Windsor police department, and Lieutenant Carl Weymouth of the East Windsor police department. Felber testified concerning Boscarino's statements elicited during questioning at the police station and while being transported to court. Kasheta, who had accompanied Felber and Boscarino to Boscarino's arraignment, testified that Boscarino had appeared very nervous while he was being transported, and that Boscarino was neither a sophisticated nor an intelligent individual. He further stated that Boscarino, who wavered from being cooperative to uncooperative during the ride, did not volunteer any information, and spoke only when questioned. Kasheta concluded that Boscarino's admission was not "a bona fide confession." As Kasheta stated, "during the time that I witnessed him the day before, and taking in that morning, I think he would have told us he stole the Brooklyn Bridge, if we would have asked."

Weymouth testified that he had interviewed Boscarino in connection with the Mini-Mart sexual assault but had come to the conclusion that Boscarino had not committed that crime for several reasons. First, Boscarino's appearance did not meet the description of the assailant. Second, Boscarino's attorney explained that Boscarino

had confessed only to stop the police from further questioning him. Third, Weymouth noted that Boscarino's car did not match the automobile observed at the scene of the crime. Finally, Weymouth presented an array of ten photographs, which included a photo of Boscarino, to K.S., but she stated that none of the photos was similar to her assailant. Because of the questionable circumstances surrounding the statements and the lack of corroborating evidence, the trial court granted the state's motion in limine.

The defendant contends that the trial court erred in granting this motion because Boscarino's statements were sufficiently trustworthy to be admitted into evidence. "In *State* v. *DeFreitas,* [179 Conn. 431, 450–51, 426 A.2d 799 (1980)], we adopted a rule, consistent with *Chambers* v. *Mississippi,* [410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973)], and in accord with rule 804 (b) (3)[2] of the Federal Rules of Evidence, which provides that trustworthy third party statements against penal interest which are exculpatory to the defendant, are admissible if the declarant is unavailable." *State* v. *Bryant,* 202 Conn. 676, 692, 523 A.2d 451 (1987); see also *State* v. *Frye,* 182 Conn. 476, 479, 438 A.2d 735 (1980); *State* v. *Gold,* 180 Conn. 619, 630, 430 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980). To be admissible, the proffered statements must be trustworthy; therefore the reliability of

---

[2] "[Federal Rules of Evidence] Rule 804. HEARSAY EXCEPTIONS; DECLARANT UNAVAILABLE . . . .

"(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness . . . . (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement. . . ."

such statements must be examined carefully. *State* v. *Bryant,* supra, 693; *State* v. *Gold,* supra.

In determining the trustworthiness of a third party declaration against penal interest, this court has set forth four general considerations: (1) the time the declaration is made and the party to whom it is made; (2) the existence of corroborating evidence; (3) the extent to which the statement is really against the declarant's penal interest; and (4) the availability of the declarant as a witness. *State* v. *Bryant,* supra, 693, and cases cited therein; *State* v. *Gold,* supra, 633; *State* v. *DeFreitas,* supra, 451. While we have recognized that there can be no precise formulation of proof which constitutes sufficient evidence of trustworthiness, we have noted that the Federal Rules of Evidence require that "corroborating circumstances clearly indicate the trustworthiness of the statement" before it is admissible. *State* v. *Gold,* supra, 630–31; see *State* v. *Bryant,* supra, 693–94. Thus, the determination of whether a third party declaration against penal interest is trustworthy is left to the sound discretion of the trial court. *State* v. *Bryant,* supra, 694; *State* v. *DeFreitas,* supra, 452, and cases cited therein.

As a threshold matter, it is uncontested that Boscarino was unavailable as a witness because he invoked his fifth amendment privilege against self-incrimination. See *State* v. *DeFreitas,* supra, 441. Additionally, it is undisputed that Boscarino's statements are against his penal interest. Thus, in determining the trustworthiness of Boscarino's statements, we need to examine only the time of the declarations and the parties to whom they were made, and the evidence corroborating the statements.

First, the time of the declarations and the parties to whom they were made weigh against the reliability of Boscarino's statements. The statements were made

approximately three weeks after the crime occurred. While this delay alone does not vitiate the reliability of the statements, we note that at no time prior or subsequent to the declarations in question did Boscarino reiterate his statements. Compare *State* v. *Bryant,* supra, 698–99 (the declarant made inculpatory statements shortly before the crime was committed, immediately after the crime had been committed and several times thereafter up until the defendant's preliminary hearing). Additionally, unlike *Chambers* v. *Mississippi,* supra, 300, *State* v. *Bryant,* supra, 698, or *State* v. *Gold,* supra, 634, Boscarino's statements were not spontaneous and unsolicited. The first time Boscarino stated that he could have been involved in the Mini-Mart sexual assault, he had been "subject[ed] to a rather long period of questioning." As to the admission made while being transported to court on the following day, Officer Kasheta stated that Boscarino had not volunteered the statement; rather, he had spoken only after having been questioned by the officers.

Moreover, Boscarino's statements were not made to close acquaintances or confidants in whom he would be expected to repose trust. See *United States* v. *Goins,* 593 F.2d 88, 91 (8th Cir.), cert. denied, 444 U.S. 827, 100 S. Ct. 52, 62 L. Ed. 2d 35 (1979); compare *Chambers* v. *Mississippi,* supra, 300 (declarant's statements made to several close acquaintances shortly after murder occurred); *State* v. *Bryant,* supra (declarant made statements to mother, brother, and friends, as well as unsolicited statement to police officer); *State* v. *Gold,* supra, 625–26, 632, 634 (declarant made spontaneous inculpatory statements to a friend of twenty years, a friend of one year, and a fellow member of the declarant's motorcycle club). Rather, the statements were made to members of the South Windsor police department, and only after questioning. Although we recognize that "[p]eople do not lightly admit a crime and

place critical evidence in hands of the police in the form of their own admissions"; *United States* v. *Harris*, 403 U.S. 573, 583, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971); according to his attorney, Boscarino stated that the only reason he admitted to the Mini-Mart assault was to stop the police from further questioning him. As the trial court opined, "[w]hile these circumstances do not necessarily make these statements inadmissible per se, they do raise serious enough questions as to consider very carefully . . . corroborating evidence and other circumstances in the case."

We now turn to the second factor, the existence of corroborating evidence to substantiate the statement. The defendant claims that Boscarino's statement that the Mini-Mart and Bess Eaton assaults were similar provided more than sufficient indicia of reliability. We disagree.

In the Bess Eaton assault, Boscarino entered the donut shop at approximately 7 p.m., wearing a ski mask and brandishing a toy gun. He forced the victim into the back of the shop and hit her over the head with a bottle, after which he fled. At no time did he attempt to assault her sexually. On the following day, Boscarino telephoned his victim and apologized. During the conversation, he also made arrangements to meet with her, and was apprehended when he attempted to do so.

There are few similarities between the two assaults. In the present case, the assailant was wearing a scarf and a hat, and was not armed. The assault took place at 5:00 in the morning, not in the evening. The assailant made no attempt to contact his victim. Most strikingly, the assailant sexually assaulted the victim. Unlike either *State* v. *Gold,* supra, or *State* v. *Bryant,* supra, where "a myriad of corroborating circumstances were present" to evince reliability, the record in the present case reveals few corroborating factors to indicate the

trustworthiness of the statements. Under the circumstances of this case, we hold that the trial court did not abuse its discretion when it concluded that Boscarino's "statements are inadmissible because . . . there was insufficient corroborating evidence as to their truthfulness."

## II

Next, the defendant claims that the trial court erred in failing to suppress the out-of-court identifications of the defendant by the victim, K.S., and by the customer at the Mini-Mart store, Tousant Thomas. The defendant contends that the identifications resulted from unnecessarily suggestive police procedures and were unreliable, and that admission of these identifications violated his constitutional right to due process. We disagree.

K.S. testified that the sexual assault lasted approximately thirty minutes and that she had numerous opportunities to view her assailant. On December 16, 1982, K.S. went to the Enfield police department and viewed a photo array of over 1000 photographs. Of these photographs she selected three as closely resembling her assailant. At that time she was "90% sure that one of these three [photographs] was the person who assaulted [her]." One of these photographs was that of the defendant.

On December 29, 1982, K.S. returned to the Enfield police station and viewed another photographic array of ten photographs and immediately picked out a more recent color photo of the defendant as her assailant. There was also evidence that K.S. had viewed another photographic array in East Windsor sometime between December 10 and December 29. K.S. testified that she had viewed a photo that she believed to be her assailant in that array. This photograph was not put into evidence at trial.

We have recently reiterated that " '[i]n determining whether identification procedures violate a defendant's due process rights, the required inquiry is made on an ad hoc basis and is two-pronged: first, it must be determined whether the identification procedure was unnecessarily suggestive, and second, if it is found to be so, it must be determined whether the identification was nevertheless reliable based on an examination of the "totality of the circumstances." ' " *State* v. *Ramsundar*, 204 Conn. 4, 10, 526 A.2d 1311 (1987), quoting *State* v. *Theriault*, 182 Conn. 366, 371–72, 438 A.2d 432 (1980); see also *State* v. *Cubano*, 203 Conn. 81, 93, 523 A.2d 495 (1987); *State* v. *Collette*, 199 Conn. 308, 310, 507 A.2d 99 (1986); *State* v. *Hinton*, 196 Conn. 289, 292–93, 493 A.2d 836 (1985). " ' " 'A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure.' " . . .' " *State* v. *Cubano*, supra; *State* v. *Hinton*, supra, 293; *State* v. *Fullwood*, 193 Conn. 238, 244, 476 A.2d 550 (1984). To prevail in his claim "the defendant must demonstrate that the trial court erred in *both* of its determinations regarding 'suggestiveness' and 'reliability' of identifications in the totality of the circumstances." (Emphasis in original.) *State* v. *Hinton*, supra.

The defendant contends that the photo identifications made by K.S. were unnecessarily suggestive because she had viewed a photoboard containing a recent color photograph of the defendant nineteen days after she had selected an older black and white photograph out of an array of over 1000 photographs as one that resembled her assailant. "Although 'we have recognized that pictorial recurrence can be suggestive in that it increases the risk of misidentification'; *State* v. *McKnight*, 191 Conn. 564, 572, 469 A.2d 397 (1983); *State* v. *Ledbetter*, 185 Conn. 607, 613, 441 A.2d 595 (1981); see *Simmons* v. *United States*, 390 U.S. 377,

383, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); the recurrent use of a defendant's photo in successive arrays is not presumptively suggestive." *State* v. *Boucino,* 199 Conn. 207, 219, 506 A.2d 125 (1986); *United States* v. *Bowie,* 515 F.2d 3, 7–8 (7th Cir. 1975); *State* v. *Evans,* 200 Conn. 350, 354–55, 511 A.2d 1006 (1986); *State* v. *Hinton,* supra, 294. In *State* v. *Evans,* supra, where the witness did not identify the defendant in the first photographic array but did positively identify the defendant in a later photographic array, with a more recent photograph of the defendant, we held that the identification procedure was not unnecessarily suggestive. "Where a witness views a photograph of a defendant which does not resemble the defendant but later identifies the defendant based on a different photograph, viewing of the earlier photograph does not taint the later photographic identification." Id., 355; *United States* v. *Brown,* 461 F.2d 134, 144 (D.C. Cir. 1972). In the present case, K.S. was certain that she had selected a photograph of her assailant rather than just a newer vintage of a photograph she had viewed previously.

The defendant further contends that the photo identification made by Thomas was also unnecessarily suggestive because, after selecting two photographs out of an array of ten, he was asked to identify which of the two photographs most clearly resembled the man he saw. He then selected the photograph of the defendant. As discussed above, the recurrent use of a defendant's photograph in successive arrays is not presumptively suggestive. The mere fact that Thomas reexamined the two photographs he had selected in a "second array" did not impermissibly increase the risk of misidentification. The recurrent use of the defendant's photograph in this case cannot be said to be unnecessarily suggestive.

Even if we were to assume that the procedures employed by the police were unnecessarily suggestive, we agree with the trial court's finding that the identifications in this case were reliable under the "totality of circumstances." "In determining whether an identification is reliable in the 'totality of circumstances,'" the corruptive influence of the suggestive procedure is weighed against 'the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.' *Manson* v. *Brathwaite,* 432 U.S. 98, 114, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977) . . . ." *State* v. *Cubano,* supra, 95; *State* v. *Collette,* supra, 311 n.3; *State* v. *Hinton,* supra, 295–96.

Under the totality of the circumstances, K.S.'s and Thomas' identifications of the defendant were reliable. K.S. had ample opportunity to view the defendant during the sexual assault. The lighting in the bathroom was sufficient for her to view the defendant clearly, and during much of the ordeal his face was only inches away from hers. Thomas also viewed the defendant in the well lit store for three to four minutes while the defendant attempted to "wait on him" as if the defendant was a Mini-Mart employee. K.S. and Thomas focused their attention on the defendant. Although Thomas' degree of attention was not as high as K.S.'s, it was nonetheless adequate for him to observe the defendant's appearance.

Furthermore, K.S. and Thomas had given accurate prior descriptions of the defendant. The only major discrepancy in these descriptions was with respect to the defendant's facial hair. K.S. described the defendant as having a goatee, although she noted that the goatee had an unnatural appearance. Thomas described the defendant as having a mustache but otherwise being

clean shaven. K.S. was also positive that she properly selected the defendant as her assailant. When she selected the defendant's photograph in the second array, she was certain that she was selecting it not because she had seen an older, black and white photograph of the defendant in the first array. Although Thomas was not positive about his identification, he nonetheless was able to describe the defendant accurately and select his photograph from an array. In *State* v. *Ledbetter,* supra, 612, we held that when the defendant challenges a photographic identification on the ground that the witness was not positive in his selection, "[c]hallenges of this nature do not rise to the level of constitutional dimension. Such challenges go to the weight rather than to the admissibility of the evidence."

Additionally, the nineteen day delay between the incident and the photographic identifications was not unreasonable. Between the date of the crime and the identification K.S. had viewed a photographic array where she made no positive identification. She brought a high school year book to the police to show the officers a picture which resembled her assailant. She was careful to note that this was not her assailant. Thus, K.S. had taken steps to identify her assailant in a careful and systematic manner. Her memory did not fail during that time period. There is also no indication that Thomas had difficulty with his identification due to the nineteen day span.

We conclude, therefore, that even if the police procedures were suggestive, they did not corrupt the overall reliability of K.S.'s or Thomas' identifications. Accordingly, the trial court was correct in admitting the identifications under the "totality of circumstances."

## III

The defendant in his final claim of error asserts that the evidence was insufficient to warrant the verdict of guilty and that the trial court erred in not granting his motion for judgment of acquittal. Reviewing the evidence as set forth above in the light most favorable to sustaining the jury's verdict; *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273 (1985); and then considering whether the verdict is one which jurors could reasonably have reached; *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984); *State* v. *Maturo,* 188 Conn. 591, 601, 452 A.2d 642 (1982); *State* v. *Jeustiniano,* 172 Conn. 275, 281–82, 374 A.2d 209 (1977); we conclude that the evidence was sufficient to sustain the jury's verdict.

There is no error.

In this opinion the other justices concurred.