STATE OF CONNECTICUT *v.* HERIBERTO LOPEZ
(14042)

FOTI, HEIMAN and HENNESSY, Js.

Argued April 17—decision released July 11, 1995

*Lauren Weisfeld,* assistant public defender, for the appellant (defendant).

*Jack W. Fischer,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Gary W. Nicholson,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a,[2] conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a)[3] and 53a-54a, and possession of a weapon in a motor vehicle in violation of General Statutes § 29-38.[4] The defendant claims that the trial court improperly (1) excluded evidence related to an out-of-court statement, (2) excused a seated juror, and (3) instructed the jury on the concept of reasonable doubt. He also claims that the state improperly impeached a defense witness on the basis of the witness' pretrial silence, and that the evidence was insufficient to sustain his conviction of possession of a weapon in a motor vehicle. We affirm the judgment of the trial court.

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023 and General Statutes § 51-199 (c), the Supreme Court transferred the appeal to this court.

[2] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

[3] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[4] General Statutes § 29-38 provides in relevant part: "Any person who knowingly has, in any vehicle owned, operated or occupied by him, any weapon for which a proper permit has not been issued as provided in section 29-28 or section 53-206, or has not registered such weapon as required by section 53-202, as the case may be, shall be fined . . . or imprisoned . . . and the presence of any such weapon in any vehicle shall be prima facie evidence of a violation of this section by the owner, operator and each occupant thereof. . . ."

The jury reasonably could have found the following facts. On May 8, 1991, at approximately 7:30 p.m., the victim, Elvis Crnkovic, and his brother Paul Crnkovic, were playing basketball at the corner of Winthrop and Davenport Avenues in New Haven. Elvis, who was sixteen years old, and Paul, who was seventeen years old, lived across the street from a vacant building on which a basketball rim was nailed. While they were playing, a brown car drove up with the defendant in the front passenger seat holding a .38 caliber revolver. A second car, a gray Mazda, also approached. The Mazda was driven by Jorge Orta, and David Morales was a passenger. Shots were fired from both cars and Elvis was hit in the back as he and his brother attempted to run away. The bullet was a "hollow point" that entered his lower back and came to rest just beneath the skin of his left collarbone. Elvis was taken to the hospital where he died as a result of his wounds. The defendant was one of the shooters.

## I

The defendant first claims that the trial court improperly excluded an out-of-court statement that allegedly was the confession of a third party. We disagree.

The facts giving rise to this claim are as follows. The state produced a witness at trial named Lenise Nestir. Nestir was seventeen years old at the time of the trial. She testified that in May, 1991, she knew the defendant, Morales, Orta, and a fourth person named Alex Romero. Approximately fifteen to twenty minutes before the crime, Nestir saw Romero in the vicinity of Rosette and Button Streets. Romero had arrived in a brown car and announced to the defendant and others that he had a gun. He asked if anyone wished to go with him to Davenport Avenue. The defendant got into the vehicle and left with Romero. Knowing that there was going to be a shooting, Nestir and a friend

walked to the Davenport Avenue area to watch. When she arrived, she saw the Crnkovic brothers playing basketball and then noticed the brown car arrive. After the shooting, Nestir walked back to Rosette and Button Streets where she observed Romero and the brown car. Romero took her behind a building where the defendant lived and gave her a gun. He told her to get rid of it because it was "hot." Instead, she kept the gun, intending to trade it for a car. The gun was subsequently seized from Nestir and determined to be the murder weapon.

At the defendant's trial, Nestir testified for the state. On May 14, 1993, Nestir was excused following her testimony. Prior to leaving the building, Nestir was served with a subpoena by the defense, summoning her to return on May 17, 1993. When she failed to appear, the defendant requested, and the trial court ordered, that a capias be issued to compel her appearance.

The state rested on May 19, 1993. Outside of the jury's presence, the defendant made an offer of proof as to the testimony of a woman named Robin Shade. Shade indicated that Nestir had told her that Nestir had killed the victim. She also testified that Nestir had been known to lie to her. The out-of-court statement was not allowed. In questioning whether defense counsel had made a tactical decision not to bring up the alleged statement during his cross-examination of Nestir, and the circumstances of the service of the subpoena, the court determined that Nestir, the declarant, was not unavailable. The court also determined that even if she were unavailable, the trustworthiness of the statement could not be found.

"A *trustworthy* third party statement exculpatory of the accused and against the penal interests of the declarant is admissible at the trial of the accused if the declarant is unavailable." (Emphasis in original.) *State*

v. *Rosado*, 218 Conn. 239, 243–44, 588 A.2d 1066 (1991). The requirement of unavailability is the prerequisite to any examination as to the trustworthiness of the statement. *State* v. *Rivera*, 221 Conn. 58, 69 n.5, 602 A.2d 571 (1992). The trial court found that the declarant was not unavailable,[5] and the court need not have gone further. It did, however, go further and found that the statement was not trustworthy.

Whether sufficient trustworthiness exists is a question that lies in the sound discretion of the court. Id., 69. Three relevant considerations when examining the trustworthiness of a declaration against penal interest are: " '(1) the time of the declaration and the party to whom the declaration was made; (2) the existence of corroborating evidence in the case; and (3) the extent to which the declaration is really against the declarant's penal interest.' " Id., quoting *United States* v. *Guillette*, 547 F.2d 743, 754 (2d Cir. 1976), cert. denied, 434 U.S. 839, 98 S. Ct. 132, 54 L. Ed. 2d 102 (1977).

The trial court made no findings relative to the first two factors; see *State* v. *Reis*, 33 Conn. App. 521, 530, 636 A.2d 872, cert. denied, 229 Conn. 901, 640 A.2d 118 (1994); and there was no motion for articulation. Although the record might be sufficient to determine when such a statement may have been made and to whom, it is not sufficient to determine whether the person to whom the statement was made was one in whom the declarant would naturally confide; *State* v. *Hernandez*, 204 Conn. 377, 392, 528 A.2d 794 (1987); whether

---

[5] We need not determine whether the trial court abused its discretion in ruling on the availability of the declarant. In finding Nestir not to be unavailable, the court examined the efforts made to locate her to determine whether they were reasonable efforts. The court also recognized that Nestir had testified at the trial but had not been cross-examined about the alleged statement. The court noted that no explanation had been offered about why Nestir was placed under subpoena after testifying, giving rise to the question of whether this was a tactical decision that precluded a claim of unavailability.

Nestir and Shade had a close and confidential relationship; *State* v. *Sanchez*, 200 Conn. 721, 726, 513 A.2d 653 (1986); and whether corroborative evidence existed that was more than a minimal amount or speculative in nature. *State* v. *Rivera*, supra, 221 Conn. 71.

On the basis of the record before us, we are unable to conclude that the trial court abused its broad discretion in finding the proffered statement to be untrustworthy.

## II

The defendant next claims that the trial court abused its discretion when it excused, without good cause and over objection, a seated juror. The defendant also alleges that the trial court's actions violated his rights to due process and equal protection.

On April 29, 1993, T was selected to be a member of the jury panel. She was excused that day and told to return on May 6, 1993, when trial was expected to commence. On May 3, 1993, while jury selection was still proceeding, T left a message with the clerk's office that she would not be able to serve. Later that day, the clerk of the court spoke to T and reported that T had indicated that she is a member of the Black Panthers, "[a]nd she doesn't know if that's going to have any bearing." She also indicated that she had been arrested in the past. This had been noted on T's voir dire form. Her final concern was that she had been notified of acceptance in an educational training program at the Area Cooperative Educational Services.

The trial court was concerned about the job training program and requested that the clerk call T to obtain more specific information about the program. The clerk later reported that the program was scheduled to begin the next day and would meet every Tuesday, from 9 a.m. to 11 a.m. T did not know whether she would be able to reapply for the program.

At defense counsel's request, T was recalled. She appeared in court on May 5, 1993, and the court conducted an inquiry. T stated that after she had been selected as a juror, she learned that she had been accepted into the training program. She had attended the first session and indicated that she would like to continue with the training. If jury service prevented her from attending every session, she would nevertheless go to the remaining sessions. When asked if she felt she should not serve on the jury, T responded "not necessarily." She stated that she would not be resentful if she had to serve on the jury. When asked if she wanted to serve on the jury, T stated "not particularly."

The trial court excused the juror. In response to the defendant's objections, the trial court stated: "Well, the record is not going to show [the] long pauses between her responses and my questions. She was obviously struggling with this a great deal. It's a [seven] session course as I understand it, and she would have [missed] two out of the seven sessions at least, if not more. I thought it was appropriate, I'll note your exception."

The defendant categorizes the court's action as a "capricious intrusion" into his right to "build a jury around those jurors already selected by both sides."[6] He argues that T said nothing when she returned to court to justify excusing her from the jury.

"The trial court is vested with wide discretion in determining the competency of jurors to serve, and that judgment will not be disturbed absent a showing of an abuse of discretion." *State* v. *Cubano*, 203 Conn. 81, 88–89, 523 A.2d 495 (1987). The court's determination, based on observation of and conversation with the juror, is entitled to reasonable deference. Id., 93. In

---

[6] The defendant did not exhaust his peremptory challenges.

this case, the record discloses that T did not particularly want to sit as a juror and that her jury duty would have caused her to miss some of the training sessions. The trial court observed and spoke to T. The court was in the best position to view the demeanor of that juror; *State* v. *Esposito*, 223 Conn. 299, 311, 613 A.2d 242 (1992); and the record cannot portray that basis for assessment.

The defendant attempts to support his claim by pointing out that the trial court refused to allow another seated juror, B, to be excused despite claims that jury duty would interfere with her ability to meet the residency requirements of her medical training. The defendant argues that by excusing T and not excusing B, the trial court's actions can be seen to be an abuse of discretion. We do not agree. B never asked to be excused; the request came from her director of residency. The court excused T while jury selection was still in progress, while B's situation arose when the jury selection process had been completed. The court acted differently for reasons that do not demonstrate an abuse of discretion.

The defendant also alleges that the trial court's actions deprived him of his due process and equal protection rights. The defendant states: "It is unclear to what extent racial and/or gender considerations entered into the decision to remove [T] from the jury." The defendant makes constitutional claims on appeal that were not raised before the trial court. No record exists that supports the defendant's claim that the trial court's excusal of T was argued as depriving him of his due process and equal protection rights. Nor was the issue of discrimination ever mentioned prior to appeal. We, therefore, cannot afford appellate review to these claims, which were not raised before the trial court. *State* v. *Zollo*, 36 Conn. App. 718, 726, 654 A.2d 359 (1995).

## III

The defendant next raises an issue based on a claim of fundamental fairness. He argues that the state improperly impeached the testimony of one of the defense witnesses on the basis of that witness' pretrial silence. The facts relevant to this claim are as follows. One of the defense witnesses was Jeanette Ayala, a cousin of the defendant who also claimed to be a good friend to the victim and his family. She testified that she had witnessed the shooting and that the defendant was not involved. She further testified that someone else had been the shooter, and that neither Nestir nor anyone else was standing on the corner of Davenport Avenue. During cross-examination, Ayala admitted that at no time did she go to the police with her information, nor did she tell the victim's family about what she had seen. During final argument to the jury, the state's attorney argued that Ayala was not credible and emphasized Ayala's testimony relative to her pretrial silence. The defendant argues that his constitutional rights to due process, to a fair trial, and to present a defense were violated by the state's attempts to impeach Ayala's testimony.

This claim was not properly preserved at trial. The defendant seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), and as plain error pursuant to Practice Book § 4185.[7]

Under *Golding*, a defendant can prevail on a claim not preserved at trial, only if all of the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitu-

---

[7] Practice Book § 4185 provides in relevant part: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ."

tional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. We conclude that the defendant cannot satisfy the second or third prongs of *Golding*.

Our Supreme Court has rejected the claim that cross-examination of a witness regarding pretrial silence for the purpose of impeachment implicates a fundamental constitutional right. *State* v. *Mullings*, 202 Conn. 1, 14–15, 519 A.2d 58 (1987). In *Mullings*, the court noted that it has "never recognized any fundamental right of a defendant not to have his witnesses discredited." Id., 15. The defendant's claim does not implicate a fundamental constitutional right, nor was the defendant's right to a fair trial clearly violated. *State* v. *Golding*, supra, 213 Conn. 239–40; see also *State* v. *Jones*, 205 Conn. 723, 738, 535 A.2d 808 (1988). This unpreserved claim does not warrant review under *Golding*.

The defendant has also requested review under the plain error doctrine. Practice Book § 4185. "Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley*, 198 Conn. 77, 87–88, 502 A.2d 388 (1985). We see no such manifest injustice here; there is no plain error in this case.[8]

---

[8] Even if we were to consider the defendant's claim, we would find it without merit. See *State* v. *Jones*, 205 Conn. 723, 535 A.2d 808 (1988); *State* v. *Mullings*, supra, 202 Conn. 1; *State* v. *Ghere*, 201 Conn. 289, 513 A.2d 1226 (1986).

444

## IV

The defendant next claims that the evidence was insufficient to sustain his conviction under General Statutes § 29-38.[9] We disagree.

A person violates § 29-38 when he or she "knowingly has, in any vehicle owned, operated or occupied by him, any weapon for which a proper permit has not been issued as provided in section 29-28 or section 53-206, or has not registered such weapon as required by section 53-202 . . . ." General Statutes § 29-28[10] describes the procedure for obtaining a pistol permit. The defendant argues that the state failed to produce sufficient evidence that he did not have a state permit.

It is fundamental that any person accused of a crime is presumed innocent unless and until the state has proven his guilt by establishing each essential element of the crime charged beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 363, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State v. Nelson*, 17 Conn. App. 556, 561, 555 A.2d 426 (1989). Our Supreme Court has concluded that the lack of a proper permit is an essential element of the crime of having a weapon in a vehicle pursuant to § 29-38 and, therefore, the state is required to prove beyond a reasonable doubt that a defendant did not have a proper permit for the weapon as provided in § 29-28. *State v. Beauton*, 170 Conn. 234, 240, 365 A.2d 1105 (1976).

[9] See footnote 4.

[10] General Statutes § 29-28 (b) provides in pertinent part: "Upon the application of any person having a bona fide residence or place of business within the jurisdiction of any such authority or upon the application of any bona fide resident of the United States having a permit or license to carry any firearm issued by the authority of any state or subdivision of the United States, such chief of police, warden or selectman may issue a permit to such person to carry a pistol or revolver within the jurisdiction of the authority issuing the same . . . . Said commissioner may, upon application, issue, to any holder of any such permit, a permit to carry a pistol or revolver within the state. . . ."

The state presented evidence tending to show that the defendant did not have a local permit. In attempting to prove that the defendant did not have a state permit, the state presented the testimony of Trooper Thomas Brazzell of the state police. Brazzell testified that the state police keep records of people who have been issued permits to carry pistols in Connecticut. On direct examination, Brazzell was asked if he had checked the records to see "whether or not an individual by the name of Heriberto Lopez with the date of birth of September 22, 1974, had a valid state permit to carry a pistol on May 8, 1991." Brazzell responded that he had checked the records and had not found "any individual with that name *or* with that date of birth." (Emphasis added.) On cross-examination, Brazzell was asked to spell the defendant's name. He spelled the defendant's name as "Herberto." The defendant argues that the trooper's record search was made for a "Herberto" Lopez, rather than for "Heriberto" Lopez, and the fact that someone with a name similar to that of the defendant and with the defendant's birthday did not have a permit was insufficient to establish the defendant's guilt.

If we were allowed to speculate, we might say that the witness intended to say "and" and not "or." We might further speculate that the date of birth is merely a backup form of identification in the event that more than one person with the same name has been issued a permit. In that case, we would agree that the evidence presented was insufficient to prove that Heriberto Lopez, the defendant, had not been issued a permit to carry a pistol in this state. We must, however, accept the record as it exists. The essence of the testimony is that as of May 8, 1991, no one with that date of birth had been issued a permit to carry a pistol. The defendant concedes that the date of birth used by the witness was correct. It follows that the evidence

was sufficient to support the claim that the defendant did not have a permit to carry a pistol on May 8, 1991. The evidence was thus sufficient to sustain the conviction.

## V

As a final claim, the defendant argues that the court improperly instructed the jury on the concept of reasonable doubt. The court defined reasonable doubt as a doubt for which a valid reason can be assigned, and as one that "in the serious affairs which concern you in every day life you would pay some attention to. It is the kind of doubt that would cause reasonable people such as yourselves to hesitate to act in the more serious and important affairs in your lives." No exception was taken. The defendant's request to charge contained similar language.[11] The defendant claims that the reasonable doubt instructions shifted or diminished the state's burden of proof thereby presenting a constitutional question reviewable under *State* v. *Golding*, supra, 213 Conn. 233, and Practice Book § 4185.[12]

Our Supreme Court has rejected the same or similar challenges. *State* v. *Kelley*, 229 Conn. 557, 643 A.2d 854 (1994); *State* v. *Campbell*, 225 Conn. 650, 626 A.2d 287 (1993); *State* v. *Adams*, 225 Conn. 270, 623 A.2d 42 (1993); *State* v. *Thomas*, 214 Conn. 118, 570 A.2d

[11] The defendant's request to charge, as pertinent, states: "Reasonable doubt is a standard used in our law to define the degree of certainty which the State must meet in proving its case. The State must proof each element to such a degree that it eliminates any reasonable doubt. Reasonable doubt certainly is not met simply by tipping the scales slightly or by a preponderance of the evidence. Reasonable doubt is such a doubt as would cause a juror, after careful, candid and impartial consideration of all the evidence and as would cause a reasonable person to hesitate or pause in the graver or more important transactions of life. The certainty which must exist must exclude such doubt. In order to establish the guilt of the accused beyond a reasonable doubt, there must be enough proof to exclude every reasonable presumption or hypotheses of innocence in the minds of each juror."

[12] See footnote 7.

1123 (1990); see also *State* v. *Brown,* 35 Conn. App. 699, 647 A.2d 17, cert. denied, 231 Conn. 932, 649 A.2d 254 (1994); *State* v. *Goodman,* 35 Conn. App. 438, 646 A.2d 879, cert. denied, 231 Conn. 940, 653 A.2d 834 (1994). When read in the context of the complete charge, the challenged instruction did not reduce the state's burden of proof. We conclude that the defendant has failed to demonstrate a violation of a fundamental constitutional right.

The judgment is affirmed.

In this opinion the other judges concurred.