STATE OF CONNECTICUT *v.* HERIBERTO LOPEZ
(AC 14042)

Landau, Schaller and Sullivan, Js.

Argued April 27—officially released July 13, 1999

*Lauren Weisfeld*, assistant public defender, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Gary W. Nicholson*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LANDAU, J. The defendant, Heriberto Lopez, was charged and convicted, after a jury trial, of murder in violation of General Statutes § 53a-54a, conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a and having a weapon in a motor vehicle in violation of General Statutes § 29-38. Following an appeal from the judgment of conviction to this court, which we affirmed; *State* v. *Lopez*, 38 Conn. App. 434, 435, 662 A.2d 792 (1995); our Supreme Court granted certification to appeal limited to the following issue: "Whether the Appellate Court properly upheld the trial court's exclusion of a third party confession?" *State* v. *Lopez*, 235 Conn. 919, 665 A.2d 907 (1995).

The Supreme Court remanded the case to the trial court to determine whether the alleged third party confession was sufficiently trustworthy to have been admitted into evidence.[1] *State* v. *Lopez*, 239 Conn. 56, 681

---

[1] Our Supreme Court concluded that the Appellate Court improperly upheld the trial court's exclusion of the third party confession. *State* v.

A.2d 950 (1996). On remand, the trial court found that the alleged confession was not sufficiently trustworthy. The defendant filed an amended appeal following that determination. The sole issue presented in this appeal is whether the trial court properly determined that an alleged third party confession was not sufficiently trustworthy to have been admitted into evidence. We affirm the judgment of the trial court.

Our Supreme Court, citing our appellate decision; *State* v. *Lopez,* supra, 38 Conn. App. 434; sets forth some of the relevant facts that the jury reasonably could have found. "On May 8, 1991, at approximately 7:30 p.m., the victim, Elvis Crnkovic, and his brother Paul Crnkovic, were playing basketball at the corner of Winthrop and Davenport Avenues in New Haven. Elvis, who was sixteen years old, and Paul, who was seventeen years old, lived across the street from a vacant building on which a basketball rim was nailed. While they were playing, a brown car drove up with the defendant in the front passenger seat holding a .38 caliber revolver. A second car, a gray Mazda, also approached. The Mazda was driven by Jorge Orta, and David Morales was a passenger. Shots were fired from both cars and Elvis was hit in the back as he and his brother attempted to run away. The bullet was a hollow point that entered his lower back and came to rest just beneath the skin of his left collarbone. Elvis was taken to the hospital where he died as a result of his wounds. The defendant was one of the shooters."[2] (Internal quotation marks omitted.) *State* v. *Lopez,* supra, 239 Conn. 59–60.

---

*Lopez,* 239 Conn. 56, 681 A.2d 950 (1996). Specifically, our Supreme Court ruled that the trial court abused its discretion in failing to determine that the third party declarant was unavailable. In addition, our Supreme Court noted that the trial court did not expressly make a finding on the trustworthiness of the proffered statement. Id., 72.

[2] "'The state introduced testimony to establish that the defendant had been a member of the Davenport Avenue gang and that the shooting was part of an ongoing feud between the defendant's gang and the 'Liberty Street Posse.' First, Lenise Nestir, followed by Perry Moore and Ivanez Virvet, three eyewitnesses to the shooting, testified about the 'bad blood' that existed between

During his case-in-chief, the defendant sought to present evidence that a third party, Lenise Nestir, and not the defendant, had committed the murder. Outside of the jury's presence, the defendant called Robin Shade, a friend of Nestir, to make an offer of proof regarding an incriminating statement that Nestir allegedly had made to Shade. In the statement, Nestir allegedly indicated to Shade that Nestir had killed the victim.[3] The out-of-court statement was not allowed.

The defendant claims that the threshold requirement of trustworthiness was satisfied because the timing of the declaration and the party to whom it was made supported its trustworthiness, and that the statement was sufficiently corroborated. We disagree.

"The law regarding the admissibility of third party statements against interest is well settled. A *trustworthy* third party statement exculpatory of the accused

---

the two gangs. Paul Crnkovic also testified that a few weeks before the shooting, he was 'jumped' by Morales. When interviewed by Detective Ralph Dinello, the defendant admitted to being at the scene in the gray car and stated that Alex Romero, who was in the brown car, had been the shooter. At trial, however, the defendant denied having made those statements and denied any participation in the shooting. During the presentation of the state's case, the defendant attempted to establish that Orta and Morales had killed Elvis in retaliation for an earlier shooting of Orta for which the Liberty Street Posse believed the Davenport Avenue gang to have been responsible." *State* v. *Lopez*, supra, 239 Conn. 60 n.6.

[3] "Shade testified that one and one-half days after the shooting, Nestir had told her about Elvis' killing. Nestir had told Shade that Paul Crnkovic, Elvis' brother, had hit Nestir in the face. Nestir remarked to Shade that she was going to retaliate by get[ting] some boys from Liberty Street to beat his butt. Shade further testified that Nestir told her that on the day of the incident, Nestir and some boys from Liberty Street drove down Davenport Avenue and saw Paul and Elvis playing basketball. According to Shade, Nestir had stated that she got a car full of guys and she said that one of them had the gun shooting it out the window up to the sky and she grabbed it from the guy and pointed it to Paulie and it didn't hit Paulie it hit someone else and she said it was his brother [the victim]."(Internal quotation marks omitted.) *State* v. *Lopez*, supra, 239 Conn. 62.

and against the penal interest of the declarant is admissible at the trial of the accused if the declarant is unavailable. *State* v. *Boyd*, 214 Conn. 132, 138, 570 A.2d 1125 (1990) [on appeal after remand, 221 Conn. 685, 607 A.2d 376, cert. denied, 506 U.S. 923, 113 S. Ct. 344, 121 L. Ed. 2d 259 (1992)]; *State* v. *Mayette*, 204 Conn. 571, 576, 529 A.2d 673 (1987); *State* v. *Hernandez*, 204 Conn. 377, 389–90, 528 A.2d 794 (1987); *State* v. *Bryant*, 202 Conn. 676, 692, 523 A.2d 451 (1987); *State* v. *Gold*, 180 Conn. 619, 630, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980); *State* v. *DeFreitas*, 179 Conn. 431, 450–51, 426 A.2d 799 (1980); see also Fed. R. Evid. 804 (b) (3). The determination of whether such a statement is sufficiently trustworthy to be admitted into evidence at trial lies within the sound discretion of the trial court. *United States* v. *Hoyos*, 573 F.2d 1111, 1115 (9th Cir. 1978); *State* v. *Mayette*, supra, 577; *State* v. *Hernandez*, supra, 390; *State* v. *Bryant*, supra, 694; *State* v. *DeFreitas*, supra, 452.

"Our present rule allowing the admission of trustworthy third party statements against penal interest has its genesis in *Chambers* v. *Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). Prior to *Chambers*, such third party statements were per se inadmissible as hearsay. *State* v. *Stallings*, 154 Conn. 272, 287, 224 A.2d 718 (1966); *State* v. *Mosca*, 90 Conn. 381, 387, 97 A. 340 (1916); *State* v. *Beaudet*, 53 Conn. 536, 551, 4 A. 237 (1886). In *State* v. *DeFreitas*, supra, [179 Conn. 449], we interpreted *Chambers* as forbidding the mechanistic application of the hearsay rule to exclude all third party statements against penal interest exculpatory of an accused. We concluded, however, that *Chambers* did not mandate the admission of every such statement but required the admission only of those statements that, after a careful examination, were determined in the sound discretion of the trial court to be trustworthy. *State* v. *DeFreitas*, supra, 451–52.

"Four considerations have been deemed relevant when examining the trustworthiness of declarations against penal interest: (1) the time of the declaration and the party to whom the declaration was made; (2) the existence of corroborating evidence in the case; (3) the extent to which the declaration is really against the declarant's penal interest; [and] (4) the availability of the declarant as a witness. *United States* v. *Guillette*, 547 F.2d 743, 754 (2d Cir. [1976]), cert. denied, 434 U.S. 839, 98 S. Ct. 132, 54 L. Ed. 2d 102 [1977]. See *United States* v. *Oropeza*, 564 F.2d 316, 325 (9th Cir. [1977]) [cert. denied, 434 U.S. 1080, 98 S. Ct. 1276, 55 L. Ed. 2d 788 (1978)]; *Henson* v. *United States*, 399 A.2d 16 [19] (D.C. App.) [cert. denied, 444 U.S. 848, 100 S. Ct. 96, 62 L. Ed. 2d 62 (1979)]; *People* v. *Foster*, 66 Ill. App. 3d 292, 294–95, 383 N.E.2d 788 [1978]. *State* v. *DeFreitas*, supra, [179 Conn. 451]; *State* v. *Bryant*, supra, [202 Conn. 693]; *State* v. *Frye*, 182 Conn. 476, 479, 438 A.2d 735 (1980); *State* v. *Gold*, supra, [180 Conn. 633]. . . . *State* v. *Rosado*, 218 Conn. 239, 243–45, 588 A.2d 1066 (1991)." (Emphasis in original; internal quotation marks omitted.) *State* v. *Lopez*, supra, 239 Conn. 70–72.[4]

We begin with an examination of the first consideration enumerated above—the time of the declaration and the party to whom it was made. Although the statement was made one and one-half days after the shooting,[5] the record does not support the conclusion that the inculpatory statement was made to someone under

[4] We note that our Supreme Court determined that Nestir was unavailable as a witness; *State* v. *Lopez*, supra, 239 Conn. 79; and that the alleged confession to the murder was against the declarant's penal interest (the state has never contested that the alleged statement was against her penal interest). Id., 74. Accordingly, the only considerations that we review in this appeal are the first and second considerations.

[5] "[A]ccording to the defendant, Shade inexplicably did not come forward with Nestir's purported statement admitting to a murder until the defendant's trial was underway two years later." *State* v. *Lopez*, supra, 239 Conn. 86 n.7 (*Callahan, J.,* dissenting).

circumstances that indicate that it was trustworthy. See *State* v. *Hernandez*, supra, 204 Conn. 392. Specifically, our review of the record before us does not support the claim that it was made to a person in whom Nestir would naturally confide. See id. (witness testifying regarding statement must be one in whom declarant would naturally confide); see also *State* v. *Rivera*, 221 Conn. 58, 70, 602 A. 2d 571 (1992) (must be close and confidential relationship between parties to conversation). Furthermore, we note that the proponent of the statement bears the burden of establishing the requisite relationship. Id., 70–71.

A review of the record reveals the following facts. On cross-examination, Shade testified that she had known Nestir for nine years. Approximately eight years before, Shade had taken care of Nestir for one period of eleven months and another period of nine months.[6] Shade, who was not related to Nestir,[7] stopped taking care of Nestir because Nestir " '[liked] to go on the streets constantly.' " *State* v. *Lopez*, supra, 239 Conn. 88 (*Callahan, J.*, dissenting). Furthermore, Shade testified that during the period of time when she took care of Nestir, Nestir had a habit of shoplifting, and that Nestir had been a bad influence on her daughters, involving them in petty criminal behavior. Shade also testified that she knew Nestir well enough to know whether Nestir was telling the truth, that Nestir often lied to her, and that she did

---

[6] Nestir was seventeen at the time of trial and, therefore, she was approximately eight or nine years old at the time that Shade took care of her.

[7] Although they were not related, Shade testified that Nestir referred to Shade as her "aunt" when Shade cared for her, which, as stated previously, was eight years prior to when Nestir allegedly made the inculpatory statement to Shade. See *State* v. *Lopez*, supra, 239 Conn. 87 n.8 (*Callahan, J.*, dissenting). We note, however, that even the existence of a sibling relationship will not *always* lead to a conclusion that there is a "close and confidential relationship" between the declarant and the witness. See, e.g., *State* v. *Rivera*, supra, 221 Conn. 70–71.

not trust Nestir. Furthermore, although Nestir occasionally visited Shade's residence after she moved out,[8] Shade testified that those visits were limited to approximately one hour in length and confined to certain areas of her home. At times, Shade did not allow Nestir into her home when Nestir visited.[9] We agree with Justice Callahan that "[i]t is reasonable to infer from this evidence that, although Nestir and Shade knew one another and were more than mere acquaintances, a certain hostility existed between them and that Shade was not a close friend of Nestir or a person in whom Nestir would naturally confide." Id. We conclude, that the trial court did not abuse its discretion in concluding that there was no close, confidential relationship between the declarant and the witness that would indicate the trustworthiness of the alleged declaration by Nestir.

We now turn to the second consideration—the existence of corroborating evidence in the case. In the present case, a review of the record reveals that there was insufficient evidence to substantiate the truth of the facts contained in the third party statement. "The corroboration requirement . . . is significant and goes beyond minimal corroboration." *State* v. *Rosado*, supra, 218 Conn. 249. To avoid the possibility of fabrication, third party statements must be construed as requiring corroborating circumstances that clearly indicate the statement's trustworthiness. Id. The defendant's corroborative evidence of Nestir's alleged statement rests on two facts: "(1) the undisputed fact that Nestir possessed the murder weapon eight days after the shooting;

---

[8] We note that "[t]he record also fails to disclose whether Nestir visited Shade's residence to visit Shade or to visit Shade's daughter's, with whom she was friendly." *State* v. *Lopez*, supra, 239 Conn. 88 n.9 (*Callahan, J.*, dissenting).

[9] Specifically, Shade testified as follows:

"[Assistant State's Attorney]: You like her over your house then?

"[Shade]: When I do let her in, she only comes to the living room and to the bathroom and that will be it for maybe an hour."

and (2) the testimony by one witness—contradicted by the unequivocal testimony of the four other witnesses to the shooting who testified that they had seen the shooter—that Nestir was present in the automobile from which *another person* had fired the fatal shots." (Emphasis in original.) *State* v. *Lopez*, supra, 239 Conn. 90 (*Callahan, J.*, dissenting)

We cannot conclude that these facts meet the "significant" level of corroboration required under *State* v. *Rosado*, supra, 218 Conn. 249. For example, there is no direct evidence identifying Nestir, or any female, as the shooter,[10] or any independent evidence supporting a key element of the proffered statement, namely, that the motive for the shooting was Nestir's earlier fight with the victim's brother,[11] that Nestir sought help from several young men in order to retaliate against the victim's brother, or that Nestir had spoken with Shade at any point after the shooting. See *State* v. *Lopez*, supra, 239 Conn. 92 (*Callahan, J.*, dissenting). Furthermore, there is no evidence in the record that Nestir ever repeated the statement. See *State* v. *Rivera*, supra, 221 Conn. 70, citing *State* v. *Mayette*, supra, 204 Conn. 578

[10] Nestir's alleged statement is in direct conflict with testimony from various witnesses. See *State* v. *Sanchez*, 200 Conn. 721, 726–27, 513 A.2d 653 (1986). "Paul Crnkovic and Ivanez Virvet, two witnesses for the state who saw the shooter, identified the defendant as the shooter. A third witness for the state, Perry Moore, identified the shooter as an unknown Latino male. A fourth eyewitness for the state, Angelo Virvet, corroborated the details provided by the other three witnesses for the state, but did not see who was in the automobile from which the shots had been fired. Alex Romero, a witness for the defense, testified that David Morales had fired the shots that had killed the victim. Jeanette Ayala, who testified for the defense, said that a man named Moses had fired the shots that had killed the victim." *State* v. *Lopez*, 239 Conn. 91 n.12 (*Callahan, J.*, dissenting). Furthermore, "[t]he defendant himself, in a statement made to the police, admitted that he had been present at the shooting and said that Alex Romero had been the shooter. The defendant recanted that statement at trial." Id., 91 n.13.

[11] See footnote 2 (noting evidence adduced at trial established motive for murder as feud between victims's brother and local street gang).

(lack of reiteration of statement considered to vitiate its reliability); see also *State* v. *Bryant,* supra, 202 Conn. 701. We agree with Justice Callahan that the evidence in this case "is minimal and speculative and fails to ensure trustworthiness." *State* v. *Lopez,* supra, 90 (*Callahan, J.,* dissenting); see also *State* v. *Rivera,* supra, 71.

As we previously have stated, our primary function in this appeal is to determine whether the trial court abused its broad discretion in refusing to admit Shade's testimony. See *State* v. *Bryant,* supra, 202 Conn. 694. Upon consideration of the entire record, we conclude that the trial court properly exercised that discretion.

The judgment is affirmed.

In this opinion the other judges concurred.